**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA**,

    Plaintiff,

    vs.                                   14-CR-4067 JAP

**SAMUEL SILVA**,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

In his AMENDED MOTION TO DISMISS-SPEEDY TRIAL (Doc. No. 101)

("Motion"), Defendant Samuel Silva (1) asserts that the postponement of the trial from April 11,

2016 to July 11, 2016 violated his speedy trial rights under the Sixth Amendment and the Speedy

Trial Act, 18 U.S.C. § 3161 and (2) asks that the Court remedy these alleged violations by

dismissing, with prejudice, the charges against him. The United States denies that Defendant's

speedy trial rights have been infringed. *See* UNITED STATES' RESPONSE TO

DEFENDANT'S AMENDED MOTION TO DISMISS-SPEEDY TRIAL (Doc. No. 120)

("Response"). On June 15, 2016, the Court held a hearing on Defendant's Motion. At this

hearing, Jacob Wishard, Jack Burkhead, and Edward Han represented the United States. Kenneth

Gleria and Jack Mkhitarian represented Defendant, who was present. Defense Counsel elicited

testimony and presented oral argument to support Defendant's speedy trial Motion. After

considering the pertinent legal standards, the parties' briefing, and arguments by counsel, the

Court denied Defendant's speedy trial Motion. Reasons for the denial are set out more fully in

this MEMORANDUM OPINION AND ORDER.

**Procedural History**

From the Court's perspective, this case has progressed through four stages: (1) accusation and out-of-court preliminary trial preparation, (2) the resolution of Defendant's first motion to suppress, (3) the flurry of additional pretrial motions that was prompted, at least in part, by Defendant's dissatisfaction with counsel and his desire to go to trial, and (4) the discovery of a conflict and the appointment of new defense counsel.

### A.  Stage One

On December 3, 2014, a grand jury returned a six-count indictment charging Defendant Samuel Silva with car-jacking and illegal possession of a firearm. (Doc. No. 2). On December 18, 2014, Defendant appeared before the Court for his arraignment and initial appearance. (Doc. No. 10). The Court promptly scheduled the trial to begin February 2, 2015. (Doc. No. 14). Over the course of the next six months, Defendant filed four unopposed motions to continue the trial setting. (Doc. Nos. 16, 19, 21, 26). The Court granted these motions, postponing the trial until November 2, 2015. (Doc. Nos. 17, 20, 22, 27).

### B.  Stage Two

On August 26, 2015, Defendant filed a motion to suppress the DNA swab the Albuquerque Police Department collected upon Defendant's arrest. (Doc. No. 28). The United States filed an unopposed motion to indefinitely extend the government's deadline to respond to the motion to suppress. (Doc. No. 29). The Court granted this request in part, but explained that it did not permit indefinite extensions. (Doc. No. 31). Instead, the Court extended the response deadline until October 30, 2015. Additionally, to ensure that the Court had time to rule on the motion to suppress, the Court *sua sponte* rescheduled the trial from November 2, 2015 to December 7, 2015. *Id.* While the motion to suppress was pending, the United States filed its first

motion to continue (Doc. No. 37), which was unopposed, and Defendant filed a fifth unopposed motion to continue (Doc. No. 40). The Court granted both motions and rescheduled the trial for February 22, 2016. (Doc. Nos. 39, 48). Subsequently, on December 15, 2015, after a suppression hearing, Defendant withdrew the first motion to suppress. (Doc. No. 50).

### C.  Stage Three

On December 11, 2015, Defendant filed a second motion to suppress, which sought the exclusion of eyewitness identification testimony. (Doc. No. 46). Within the next week, Defendant also filed a motion to exclude evidence of his prior felony convictions (Doc. No. 47) and a motion to dismiss Counts 1-2 of the indictment (Doc. No. 54). Approximately one month later, on January 14, 2016, while the second round of pretrial motions was pending, Defendant filed a motion requesting the appointment of new counsel. (Doc. No. 62). On January 20, 2016, the Court held a hearing on the motion. (Doc. No. 70). At the hearing, Defendant explained that he was dissatisfied with the performance of his public defenders – Devon Fooks and Brian Pori – and lacked confidence in their ability to effectively represent him. *Id.* Ultimately, however, Defendant agreed to withdraw the motion for new counsel as long as the Court would postpone the trial until April 11, 2016. *Id.* The Court granted Defendant's request and rescheduled the trial on April 11, 2016. (Doc. No. 73).

In preparation for trial, the Court proceeded to issue rulings on Defendant's pending motions. On January 26, 2016, the Court denied Defendant's motion to dismiss. (Doc. No. 77). On February 4, 2016, the Court denied Defendant's motion to exclude evidence of his prior

felony conviction. (Doc. No. 80). On March 4, 2016, the Court granted Defendant's second motion to suppress. (Doc. No. 86).[1]

### D.  Stage Four

According to the parties, sometime in February 2016, the United States' lead prosecutor, Mr. Wishard, informed Defense Counsel that Defendant *may* have potential liability in the United States' "SNM" prison gang investigation based on Defendant's alleged involvement in the murder of Matthew Chandler, a rival gang member. At or around that time, Defense Counsel informed Mr. Wishard that (1) their office, the Office of the Federal Public Defender, has a conflict with the SNM investigation and (2) Defendant's inclusion in the SNM investigation *might* create a conflict in their representation of Defendant. The import of this conflict, however, remained largely unexplored until March 2016 when, during the course of plea negotiations, Mr. Wishard pressed for resolving Defendant's potential SNM liability along with his liability for the car-jacking related charges in this case.

After some discussion, Defense Counsel responded that they were unable to represent Defendant in such negotiations due to the conflict of interest that existed because of the involvement of their office in the SNM case. Consistent with this representation, on March 17, 2016, Defense Counsel filed an ex parte motion to withdraw. (Doc. No. 89). On March 23, 2016, the Court held a hearing on the motion. (Doc. No. 95). At this hearing, Defense Counsel explained that because Defendant was a potential target in the SNM prison gang investigation and the United States had proposed negotiating a joint plea deal, Defense Counsel had a conflict of interest that prevented their continued representation of Defendant. *Id.* After considering this

---

[1] During this period of time, Defendant filed a motion in limine seeking permission to introduce evidence of his lack of motive to commit the charged crimes. (Doc. No. 81). Defendant eventually withdrew this motion before the Court ruled on it. (Doc. No. 117).

explanation, the Court asked Defendant whether he objected to the withdrawal. The following

exchange occurred:

> Court:  What is your position on the motion to withdraw?
>
> Defendant: I just - - I understand that they have to take the position that they have to, and do what they do, and whatever has to be done. I think that to pursue that, that's fine. I understand. I just want to reserve my right to a speedy trial, knowing that, but I do understand.
>
> Court: Well, I want to make sure, is what you are saying that you do not object to their withdrawing?
>
> Defendant: No.
>
> Court: You do not object?
>
> Defendant: No.
>
> Court: Okay. Do you understand that if I grant the motion, your trial will be delayed maybe as long as five months?
>
> Defendant: I understand.
>
> Court: Is that acceptable you?
>
> Defendant: That's fine.

(Doc. No. 110 at 8:15-9:7). Based on this colloquy, the Court granted the motion to withdraw.

(Doc. No. 96). The Court rescheduled trial for July 11, 2016 in order to allow time for the

appointment of new counsel and to allow new counsel time to prepare. (Doc. No. 98).

## Legal Standard

### A.  The Sixth Amendment

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall

enjoy the right to a speedy . . . trial." U.S. CONST. amend. VI. The speedy trial right attaches at

the time of accusation – when a defendant is arrested or indicted. *United States v. Banks*, 761

F.3d 1163, 1181 (10th Cir. 2014). After this point, a court facing a speedy trial challenge must

engage in a two-step process to determine if a defendant's Sixth Amendment speedy trial rights have been violated. First, as a threshold matter, a defendant must show that the interval between his accusation and his trial qualifies as presumptively prejudicial. *United States v. Hicks*, 779 F.3d 1163, 1167-1168 (10th Cir. 2015); *see also United States v. Velarde*, 606 F. App'x 434, 437 (10th Cir. 2015) (defendant's constitutional claim is foreclosed where delay is not presumptively prejudicial). Generally, a delay greater than one-year will satisfy this standard. *Banks*, 761 F.3d at 1182. Second, once a defendant establishes that the period of delay is presumptively prejudicial, "[t]o determine whether [the] defendant's Sixth Amendment right has been violated, the court balances four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) whether the delay prejudiced the defendant." *Id.* at 1182. The balancing test is not mechanistic; the court considers the factors in their totality. As a general rule, "[n]one of the factors is itself necessary or sufficient to conclude that the Sixth Amendment speedy trial right has been violated." *Id.*

### B. The Speedy Trial Act

The Speedy Trial Act sets forth specific deadlines for trying a criminal defendant on federal charges. The purpose of the statute is twofold: to "protect a criminal defendant's constitutional right to a speedy trial" and to "serve the public interest in bringing prompt criminal proceedings." *United States v. Margheim*, 770 F.3d 1312, 1318 (10th Cir. 2014). To advance these interests, the Speedy Trial Act provides that:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1). The Act allows, however, for delay of the trial in certain circumstances, including "delay resulting from any pretrial motion" and "[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." § 3161(h). Delays of this nature are properly "excluded from the statute's prescribed seventy-day period, thus tolling the speedy-trial clock." *Margheim*, 770 F.3d at 1318.

### Discussion

Defendant argues that the United States violated his rights under the Sixth Amendment and the Speedy Trial Act by deliberately creating a conflict between Defendant and his former counsel in order to delay the April 11, 2016 trial setting. To support this theory, Defendant points out that (1) the lead prosecutor knew the Office of the Federal Public Defender had a conflict with the SNM investigation, (2) the United States waited 19 years to threaten Defendant with liability for the SNM-related murder, (3) the United States had not filed jury instructions, voir dire, or any motions in limine as of mid-March 2016, less than one month before trial. Defendant maintains that these facts give rise to an inference that the United States was not prepared for trial and decided to target Defendant in the SNM investigation in order to delay the trial in this case. Defendant does not, however, deny that a conflict actually existed as a result of the United States' joint plea proposal. Nor does Defendant find fault with the Court allowing former Defense Counsel to withdraw as a result of this conflict, appointing new counsel, and postponing the trial three months to allow new counsel time to prepare. As Defendant candidly admits, both of his speedy trial arguments hinge on his assertion that the United States <u>purposively</u>

7

manufactured the conflict to delay a trial for which the United States was not prepared. In other words, Defendant's speedy trial arguments fail in the absence of a finding of government misconduct. For the reasons discussed below, the Court declines to issue such a finding on the record before it.

First and most importantly, as Defendant concedes, he has not presented any direct evidence establishing the prosecution's allegedly unconstitutional intent to delay the trial. At the evidentiary hearing, Defendant did not question the prosecutors under oath regarding their intentions. While Defendant called his former attorney Devon Fooks to testify about the timing of events, Defendant did not elicit any testimony from Mr. Fooks or any other witness indicating that the prosecution's purpose in informally targeting Defendant with SNM liability was to force the Court to postpone the trial.

Second, the circumstantial evidence that Defendant identifies to support his accusations of prosecutorial misconduct is exceptionally weak. Given the timing of events, Defendant asks the Court to infer that the United States had a motive for delaying the trial and that this motive, and not neutral reasons, prompted the United States to issue a plea offer involving the SNM investigation. Neither conclusion, however, is dictated or even strongly implied by the evidence. The series of events that Defendant finds suspicious can be explained equally well by constitutional behavior. For example, Defendant speculates that the United States' failure, as of mid-March 2016, to file proposed jury instructions, proposed voir dire, or other pretrial documents reveals that the United States was not prepared for trial. The Court disagrees. Defendant's former counsel, an experienced federal public defender, testified that it was not unusual to wait until closer to trial to file pretrial documents. This is consistent with the Court's experience. Moreover, as the United States points out, the Court's form scheduling order

provides that "Proposed Voir Dire questions to the jury, Jury Instructions, and Motions in Limine are due, on or before, 5 working days before the above trial date." *See* ORDER (Doc. No. 73 at 2). Consequently, the Court cannot assume that the United States' failure to file these documents weeks before trial demonstrated a lack of preparedness. This is fatal to Defendant's claim. In the absence of any evidence that the United States desired that the trial be rescheduled, Defendant's theory regarding the United States' bad faith in issuing the joint plea offer falls apart.

Similar problems underlie Defendant's claims that the United States' delay in threatening him with liability in the SNM case was not legitimate. Defendant has produced no proof that the United States' decision to make a joint plea offer was a pretext for delaying the trial, rather than a good faith exercise of prosecutorial discretion. The timing alone does not provide the Court with enough information about the United States' reasons for making the joint plea offer to infer that the United States lacked new evidence or some other good reason for proposing the resolution that it did. The Court will not conjecture that the United States' had bad motives in the absence of such evidence.

Third, even if Defendant's suspicions carried any weight, the United States has denied that it targeted Defendant in the SNM investigation in order to delay the trial. In its signed response, the United States represented that it pressed "counsel for Defendant to discuss the inclusion of the SNM matter in a negotiated settlement" based on new information that led the prosecuting attorney to believe Defendant evaded prosecution for the SNM murder in state court. Response at 12. Furthermore, at the June 15, 2016 hearing, the United States reiterated that the prosecuting attorney proposed a joint resolution in order to "sweeten" the plea deal. The United States claims that the creation of the conflict was coincidental. *Id.* at 19. This explanation is

consistent with the procedural history of the case and the Court finds no basis for rejecting the

United States' explanation. As a result, the Court will deny Defendant's speedy trial Motion.[2]

       IT IS THEREFORE ORDERED that Defendant's AMENDED MOTION TO DISMISS-

SPEEDY TRIAL (Doc. No. 101) is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[2] As previously noted, Defendant does not identify any other grounds, aside from the United States' alleged misconduct, for finding a speedy trial violation. Consequently, the Court need not address whether any speedy trial violations exist in the absence of government misconduct. The Court notes, however, that any such argument would stand on very weak legs. On March 25, 2016, the Court entered an ORDER (Doc. No. 98) excluding the period between April 11, 2016 and July 11, 2016 from the speedy trial clock, thereby leaving 24 days to begin trial. The only ground Defendant has provided to reconsider this decision is his unsupported argument that the United States purposively manufactured the conflict that led to this delay. Having rejected this argument, the Court reaffirms its earlier decision excluding the three-month delay from April to July 2016 from the speedy trial clock. As for Defendant's Sixth Amendment rights, while this case is 19-months-old, Defendant shoulders most of the responsibility for this delay. After Defendant was indicted, the Court promptly scheduled a trial for February 2, 2015 trial. Of the 17-month delay that followed, twelve months and one week of the delay is attributable to continuances requested by Defendant. Moreover, Defendant has not shown that this delay prejudiced his right to a fair trial. *See Hicks*, 779 F.3d at1168 ("Failure to show prejudice caused by the delay is nearly fatal to a speedy trial claim."). Given these facts, the Court would not be inclined to find a Sixth Amendment speedy trial violation in the absence of government wrongdoing.