IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

    Plaintiff,

    vs.                                                                                               14-CR-4067 JAP

**SAMUEL SILVA**,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

On April 18, 2016, Defendant Samuel Silva filed a MOTION TO SEVER COUNTS (Doc. No. 102) ("Motion") requesting that the Court order two trials on the charges against him. The United States opposes the Motion on the basis that Defendant has not demonstrated sufficient prejudice to warrant the expense and inconvenience of separate trials. *See* UNITED STATES' RESPONSE TO MOTION TO SEVER COUNTS (Doc. No. 107). Defendant has not filed a reply. The Court, however, held a hearing on the Motion on June 15, 2016. At this hearing, Kenneth Gleria and Jack Mkhitarian represented Defendant, who was present; Jacob Wishard, Jack Burkhead, and Edward Han represented the United States. Having carefully considered the briefing, the parties' oral arguments, and the controlling law, the Court will, for the reasons discussed below, grant Defendant's Motion.

**Background**

On December 3, 2014, a grand jury returned a six-count indictment charging Defendant Samuel Silva with: (1) attempted carjacking, (2) brandishing a firearm arm during a crime of violence – attempted carjacking, (3) carjacking, (4) discharging a firearm during a crime of violence – carjacking, (5) illegally possessing ammunition as a felon, and (6) illegally possessing a firearm and cartridges as a felon. *See* REDACTED INDICTMENT (Doc. No. 2). Counts 1-5

arose from two home invasion robberies that occurred back-to-back on April 23, 2014. The perpetrator of these crimes forced his way into the home of a 66-year-old woman, threatened her with a handgun, tied her up with electrical wires, stole her jewelry, and demanded her car keys. While the perpetrator was searching for these keys, the victim escaped and called the police. The perpetrator fled the house and forced his way into a neighboring home where he shot the resident (a middle-aged man), stole the resident's Ford F-150 Truck, and fled the scene. Later that day, police recovered the stolen vehicle with blood in the interior. When a DNA test returned a match between this blood sample and Defendant, police obtained a warrant for Defendant's arrest.

Count 6 of the indictment (the second felon in possession Count) arose from Defendant's arrest. On July 1, 2014, police stopped Defendant while he was driving a rental car. During the arrest, police saw part of a handgun in the vehicle. They obtained a warrant to search the rental car and discovered, among other things, a .40 semiautomatic handgun. Consequently, in addition to the carjacking-related charges (Counts 1-5), which included a felon in possession charge associated with the ammunition that was discharged during the theft of the Ford F-150 Truck (Count 5), the United States brought charges against Defendant for being a felon in possession of the firearm found in the rental car at the time of Defendant's arrest (Count 6).

## Legal Standard

Federal Rule of Criminal Procedure 8(a), which governs the joinder of offenses, provides:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Offenses properly joined under Rule 8(a) are typically tried together. A district court, however, possesses the authority to order separate trials on separate offenses "or provide any other relief that justice requires" if joinder of the offenses "appears to prejudice a defendant or the

government." FED. R. CIV. P. 14(a). As used in Rule 14(a), prejudice means "actual prejudice." *United States v. Clark*, 717 F.3d 790, 818 (10th Cir. 2013); *United States v. Martin*, 18 F.3d 1515, 1518 (10th Cir. 1994). A defendant seeking severance of offenses carries the heavy burden of showing real prejudice from the joinder of the counts, such as "a serious risk that a joint trial would compromise a specific trial right . . . , or prevent the jury from making a reliable judgment about guilt or innocence" on a specific count. *Clark*, 717 F.3d at 818.

> Relevant to this case, the Tenth Circuit has acknowledged that:
>
> The joinder of multiple offenses in a single trial may result in prejudice to a defendant because the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged. The jury may also confuse or cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find.

*Lucero v. Kerby*, 133 F.3d 1299, 1314 (10th Cir. 1998) (internal citations omitted*); see also United States v. Muniz*, 1 F.3d 1018, 1023 (10th Cir. 1993) ("When joinder of offenses is based upon their 'same or similar character,' the prejudice to the defendant is more likely since proof of one crime may tend to corroborate the commission of the other crime in violation of the evidentiary rules against evidence of a general criminal disposition or propensity to commit crime."). At the same time, however, the Tenth Circuit has indicated that instances where spillover prejudice necessitates severance are rare. *See*, *e.g.*, *Lucero*, 133 F.3d at 1314-1316 (acknowledging possibility of prejudice from joinder of unrelated rape charges but finding that prejudice did not deprive defendant of a fair trial because the jury was able to compartmentalize the evidence as to each charge); *Muniz*, 1 F.3d at 1023 (applying similar reasoning to uphold joint trial of two felon in possession charges); *see also United States v. Hollis*, 971 F.2d 1441, 1457 (10th Cir. 1992) ("The district court was not required to sever the counts simply because the cumulative effect of evidence of similar misconduct might potentially prejudice the

3

defendant."); *United States v. Cox*, 934 F.2d 1114, 1120 (10th Cir. 1991) ("[T]hat the government's evidence was stronger on some counts than on others does not mandate severance under Rule 14.").

When evaluating a Rule 14(a) challenge to the joinder of similar but unrelated charges, the district court must first weigh the risk that the joint presentation of evidence will, given the particular facts, deprive the defendant of a fair trial. *See Clark*, 717 F.3d at 818. Second, if the court is convinced that a serious risk of prejudice exists, it must then consider the appropriate remedy. A showing of prejudice under Rule 14(a) does not automatically require severance. Rule 14(a) leaves "the tailoring of any relief to the trial court's discretion." *United States v. Hill*, 786 F.3d 1254, 1273 (10th Cir. 2015). In many cases, instead of severing counts, a court may cure prejudice caused by joinder by giving a limiting instruction to the jury directing it to individually consider the evidence relevant to each count. *Id.*; *see also United States v. Tucker*, 502 F. App'x 720, 726 (10th Cir. 2012) (jury instructions cured any prejudice caused by trying crimes together because the court "directed the jury to separately consider the evidence concerning the distinct counts of the indictment and admonished the jurors to not permit their verdict concerning one count to control their verdict concerning any of the other counts of the indictment").

It is a rare case where a defendant clears both of the above hurdles so that severance is required. This is because (1) courts are suspicious of generalized claims of spillover prejudice absent specific facts showing a risk that a jury will improperly convict because of confusing or overpowering cumulative evidence, *see* cases discussed *supra* page 3, (2) courts generally assume that limiting instructions are effective, *Tucker*, 502 F. App'x at 726, and (3) in deciding whether severance is required, "the district court has a duty to weigh the prejudice resulting from a single trial of counts against the expense and inconvenience of separate trials," *United States v.*

*Parra*, 2 F.3d 1058, 1062 (10th Cir. 1993). These latter two principles, in particular, usually impel courts to find that prejudice caused by joinder of unrelated offenses can be cured without the need for a separate trial. However, in any particular case, granting or denying a severance under Rule 14(a) "generally lies within the sound discretion of the trial court." *Hill*, 786 F.3d at 1272.

## Discussion

1. **Joinder of the charges against Defendant is proper under Fed. R. Civ. P. 8(a).**

It is not clear whether Defendant is challenging the joinder of the offenses under Rule 8(a). He cites Rule 8(a) and subsequently makes the following assertion:

> In the instant case, the only similarity between counts 1-5, and count 6 of the Indictment is the nature of the possession of a firearm and ammunition by a felon . . . This similarity is not sufficient to support joinder of offenses charged in counts 1-5, with that charged in count 6 of the Indictment.

Motion at 3. However, as the United States points out, all of Defendant's arguments are directed at prejudice, not the propriety of joinder under Rule 8(a). Moreover, the Tenth Circuit has held that the United States may properly join unrelated felon in possession charges in the same indictment. *Muniz*, 1 F.3d at 1022-1023 (two counts of felon in possession were properly joined under Rule 8(a) because the crimes were of the same or similar character). Consequently, it was acceptable for the United States to include Count 6 (felon in possession) in the indictment along with Count 5 (felon in possession) and the other charges that arose from the April 23, 2014 crime spree.

2. **Because of the violent nature of Counts 1-5 and the disparity of the evidence, the Court will exercise its discretion to sever Count 6.**

In his Motion, Defendant identifies three potential sources of prejudice which he believes require the Court to sever the trial of Counts 1-5 from the trial of Count 6: (1) the United States

will seek to introduce prior conviction evidence, (2) Defendant may want to exercise his right to testify as to Count 6, but not Counts 1-5, and (3) the graphic evidence associated with Counts 1-5 will prejudice the jury as to Count 6. While the Court is not convinced that Defendant's first two concerns present a real risk of prejudice, the Court agrees that the nature of the evidence underlying Counts 1-5 could prejudice the jury as to Count 6.

    *a. Prior Conviction Evidence*

Defendant contends that "[t]he separate crimes alleged in the December 3, 2014 Indictment, coupled with presentation of evidence by the Government of a prior felony conviction(s) regarding both the April 23, 2014 and July 1, 2014 alleged crimes will result in real prejudice [to] the Defendant Samuel Silva." Motion at 5. The Court finds this argument unavailing. Evidence of Defendant's felony status is admissible to prove both Count 5 and Count 6 (the two felon in possession charges). Thus, joinder of Counts 1-5 with Count 6 does not create prejudice to Defendant with regard to the admission of prior conviction evidence. Even if the Court holds separate trials on the charges arising from the April 23, 2014 crimes (Counts 1-5) and the July 1, 2014 felon in possession charge (Count 6), the jury in both cases would hear evidence of Defendant's felony status.

    *b. Defendant's Right to Testify*

Defendant next maintains that joinder will result in prejudice because he may want to testify as to Count 6, but remain silent as to Counts 1-5. In *United States v. Martin*, the Tenth Circuit reviewed "what a defendant who wishes to remain silent on some counts and testify on other counts must do before he is entitled to a severance under rule 14." 18 F.3d at 1518. As the Court reaffirmed:

> No need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain

6

> from testifying on the other. In making such a showing, it is essential that the defendant present enough information--regarding the nature of the testimony that he wishes to give on one count and his reasons for not wishing to testify on the other--to satisfy the court that the claim of prejudice is genuine and to enable it to intelligently weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying.

*Id.* at 1518-1519 (internal citations omitted). In summary, to obtain a Rule 14(a) severance to protect his constitutional right to testify, a defendant must (1) persuade the Court that defendant intends to provide important testimony with regard to certain counts and (2) explain why providing this testimony would compromise defendant's right to remain silent as to the other counts. *Id.* at 1519.

Defendant does not make any serious attempt to satisfy this standard. Defendant does not describe his proposed testimony as to Count 6. Nor does he explain why he believes this testimony, which may be limited, will expose him to cross examination as to Counts 1-5, thereby impinging upon his right to remain silent as to these counts. In the absence of this information, Defendant has not carried his burden of showing prejudice warranting a Rule 14(a) severance.

    c. *Inflammatory Evidence of Violence*

Finally, Defendant generally argues that the graphic evidence underlying Counts 1-5, which includes pictures of blood, will prejudice the jury as to Count 6. The Court agrees that evidence regarding the April 23, 2014 home invasions would make it difficult for a jury to issue a fair decision regarding Defendant's guilt as to Count 6 – an unrelated felon in possession charge.

Factors relevant to determining whether real spillover prejudice exists include the respective weights of the evidence against the defendant on each count and whether the evidence is overlapping. Prejudice is more likely if "there is a great disparity in the amount of evidence underlying the joined offenses," thereby creating a risk that the jury will convict on the weaker

case because of its association with the stronger case. *Lucero*, 133 F.3d at 1315. Similarly, if evidence on one count is highly inflammatory this increases the risk that the jury may not be able to properly separate the evidence and disregard the inflammatory evidence when considering the defendant's guilt on the unrelated charges of the same character. *See United States v. Baker*, 98 F.3d 330, 335 (8th Cir. 1996) (holding that the trial court should have severed the trial of two defendants because co-conspirator statements and certain highly inflammatory advertisements and book covers were only admissible against one defendant). On the other hand, prejudice is less likely if "evidence of each crime is simple and distinct" and the jury can easily compartmentalize the evidence and avoid improper accumulation of evidence across counts. *Lucero*, 133 F.3d at 1315-16.

These factors support a finding that a joint trial would compromise Defendant's right to have the jury make a reliable judgment regarding Defendant's guilt on Count 6. First, there is strong evidence of Defendant's guilt on Counts 1-5, the charges arising from the April 23, 2014 home invasions. The United States plans on introducing DNA evidence connecting Defendant to the robberies. In addition, one of the victims will testify that she identified Defendant from a photo array as the person who most matched her memory of her attacker. By comparison, Defendant maintains (and the United States has not denied) that the only evidence linking Defendant to the firearm that forms the basis of Count 6 is the firearm's location within a rental car Defendant was driving. Defendant contends that this firearm contained DNA evidence that does not belong to Defendant. Given this disparity of evidence, the Court finds that there is a clear risk that the jury could convict Defendant on Count 6 based on an impermissible propensity inference. In other words, the Court is seriously concerned that the jury might not be able to

8

ignore the evidence establishing Defendant's involvement in the home invasions when deciding whether he was in possession of a different firearm two months later in July 2014.

Second, this is not a case where evidence of each crime charged in the indictment is separate and distinct. This has the potential to sow significant confusion. Unlike in *Muniz*, where the Tenth Circuit upheld the joinder of two unrelated, but clearly separate felon in possession counts, *see* 1 F.3d at 1020-1021, here the United States has lodged both related and unrelated charges against Defendant in the same indictment. Counts 1-5 are properly joined under Rule 8(a) as part of a common scheme or plan: all of these charges, including the felon in possession charge, arose from two consecutive April 23, 2014 robberies. The evidence that would support a conviction on these counts coincides and overlaps. For example, the United States plans on presenting DNA evidence connecting Defendant to the theft of the second victim's vehicle. This evidence has relevance to Defendant's guilt on the attempted car-jacking of the first victim because there is evidence indicating that the same person committed both crimes. Similarly, the United States will argue that the DNA evidence tying Defendant to the stolen truck supports a finding that he was the perpetrator who shot the second victim and can, therefore, be convicted of being a felon in possession of the ammunition used during the attack.

The only reason the United States was able to include Count 6 in the indictment, however, was because it is the same type of charge as Count 5. Aside from Defendant's felony status, there is no connection between Count 6 and Counts 1-5; the April 23, 2014 crimes are separate and distinct from Defendant's alleged possession of a firearm on July 1, 2014. The Tenth Circuit has warned that prejudice to the defendant is more likely if "joinder of offenses is based upon their 'same or similar character.'" *Muniz*, 1 F.3d at 1023. The risk is increased in cases like this one where the government joins "same or similar" but factually unrelated charges

9

(here two felon in possession counts) with other offenses that are part of the same scheme, plan, or transaction as only one of "same or similar" charges.

  The Court finds the risk of improper accumulation of evidence particularly concerning in this case because the police do not appear to have recovered the firearm used during the April 23, 2014 robberies. Consequently, the only firearm that will be presented into evidence at trial will be the unrelated firearm recovered from the rental car at the time of Defendant's arrest. This has the potential to create the misleading impression that the firearm recovered from the rental car may have been used in the April 23, 2014 armed robberies. The nature of the United States' proposed photographic evidence highlights this risk. Flipping through the photographic evidence, identified on the UNITED STATES' EXHIBIT LIST (Doc. No. 126), the reader first sees photographs of the April 23, 2014 crime scene. These photographs include photographs of the victims and their injuries, photographs of property damage caused by the intruder, photographs of a broken glass door, photographs of blood, and photographs of shell casings recovered from the scene. Next, the reader would see photographs of the rental car in which Defendant was arrested and photographs of the gun recovered from the rental car. In other words, the jurors will see pictures documenting a violent crime that involved the use of a firearm and will then see pictures of a firearm found in a rental car Defendant was driving months later. The risk of potential spillover prejudice from this evidence rises far above routine spillover prejudice caused by the presentation of evidence that the defendant committed multiple, but obviously unrelated crimes.

  Third, the evidence underlying Counts 1-5, which would not be admissible in a separate trial of Count 6, is graphic in nature. The United States seeks to introduce photographs of the victims' injuries, including pictures of lacerations and pictures of one of the victims in the

hospital with blood seeping through the gauze around his leg. Moreover, the United States has listed the 911 audiotape as an exhibit. *See* UNITED STATES' EXHIBIT LIST (Doc. No. 126 at 3). In ruling on Defendant's second motion to suppress, the Court listened to the portion of this recording in which the second victim talks to the dispatcher. Understandably, the victim (who had been shot) was extremely distraught and the Court expects the tape to be distressing to the jury. Finally, the Court observed the second victim testify in court and anticipates that the trial testimony of both victims will be emotional. For all of these reasons, the Court finds that a joint trial on all of the charges poses a serious risk of prejudice to the Defendant.

Furthermore, the Court determines that severance is the appropriate remedy under Rule 14(a). Given the nature of the charges, the Court cannot simply direct the jury to separately consider the evidence on each count and trust that this will cure any prejudice. Such an instruction would be inaccurate and confusing because the jury will need to weigh all of the evidence about the April 23, 2014 robberies when determining Defendant's guilt as to Counts 1, 2, 3, 4 and 5. As a result, in order to avoid any potential misunderstanding regarding which evidence the jury could properly consider on each count, the Court would need to craft a more detailed instruction telling the jury to consider only certain evidence – for example the evidence flowing from Defendant's July 1, 2014 arrest – when deliberating about Count 6. But an instruction with this level of detail might improperly draw the jury's attention to the evidence of Defendant's guilt on Count 6 rather than highlighting gaps in the United States' evidence. Furthermore, in light of the extreme disparity in the strength of the evidence, the Court is not convinced that the jury would be capable of following such an instruction and compartmentalizing the evidence. For all of these reasons, the Court concludes that this is the rare case where it is better to sever the trial on Count 6 from the trial of Counts 1-5 to prevent a

potential violation of Defendant's right to a fair trial. In reaching this conclusion, the Court has considered the inconvenience and expense of holding two trials. Because the trial on Count 6 should be quick and straightforward (no more than 2 days), the Court concludes that the risk of prejudice outweighs the cost of holding separate trials.

IT IS THEREFORE ORDERED THAT:

1. Defendant's MOTION TO SEVER COUNTS (Doc. No. 102) is GRANTED.
2. The Court will proceed with trial on Counts 1-5 at the July 11, 2016 trial setting.
3. The Court will issue a separate order scheduling trial on Count 6 to begin August 1, 2016.

_____
SENIOR UNITED STATES DISTRICT JUDGE